**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Gary Allen Washington and<br>Michele Anne Washington,<br><br>Debtors. | Case No. 14-05589-DD<br><br>Chapter 11<br><br>**ORDER GRANTING RELIEF FROM STAY** |

This matter comes before the Court on a Motion for Relief from Stay ("Motion") filed by Creditor South Carolina Community Bank ("Creditor"). Debtors Gary Allen and Michele Washington ("Debtors") objected to the Motion. The Court held a preliminary hearing on the Motion February 12, 2015, and a final hearing February 19, 2015. Based on the findings of fact and conclusions of law stated on the record at the hearings, as further memorialized here, Creditor's Motion is granted.

**I. Facts and Procedural History**

Debtors filed for protection under chapter 11 of the Bankruptcy Code on October 3, 2014. This is their third bankruptcy since 2009.[1] Creditor is the holder of a lien encumbering Debtors' properties at 1811 and 1815 Gervais Street in Columbia, South Carolina ("the Properties"). The Properties house the Debtors' business, Carolina Procurement Institute, Inc. ("CPI"). Debtors rent the remaining space to other commercial tenants. Debtors scheduled the value of the Properties as $306,300 and Creditor's lien totaling $366,000.

---

[1] Debtors' first case was No. 09-08248-dd, filed November 2, 2009, and dismissed on September 24, 2010, at the request of the United States Trustee for cause pursuant to 11 U.S.C. § 1112(b)(4)(A) ("'cause' includes … the absence of a reasonable likelihood of rehabilitation"). Debtors' second case, No. 11-00625-dd, was filed February 3, 2011. The Debtors' plan was confirmed in that case on December 22, 2011, and the Court entered a final decree closing the case on July 17, 2012.

1

Creditor filed its first motion for relief from stay on December 9, 2014.[2] Debtors objected to the motion and the Court held a hearing on the matter on January 7, 2015. At the hearing, the parties informed the Court that they had reached a settlement and announced certain terms of the settlement on the record, including that Mr. Washington would begin payments of $2,600 per month to the Bank starting March 15, 2015. The Court requested that the parties reduce the settlement terms to writing, file it, and provide the other creditors in the case with notice and an opportunity to object. The parties later informed the Court that they were unable to reduce the settlement to writing. Creditor subsequently filed this Motion on January 21, 2015.

In its Motion, Creditor states that its loan matured on March 6, 2014 and that there is no equity in the property: the total amount due on the loan is $369,781.72 with interest, and the Properties are worth $306,300. In addition, Creditor asserts that Debtors have not made payments towards the loan since March 6, 2014. Creditor therefore argues that it is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1), for lack of adequate protection, and 11 U.S.C. § 362(d)(2), because there is no equity in the property and the property is not necessary for reorganization.

Debtors did not dispute that they have not made payments on the loan and that the value of the loan is more than the current value of the property. Instead, counsel for Debtors argued at the preliminary hearing that the settlement agreement tentatively reached in January is evidence of their attempts to provide Creditor with adequate protection. Debtors argue that if the Court would order Mr. Washington to make the payments stated on the record at the January 7 hearing, this would adequately protect Creditor's interest. Debtors further argue that the Properties are necessary for a reorganization because they provide CPI with a special "HUBZone" status that is essential to CPI maintaining its government contracts. Finally, Debtors argue that the Properties

---

[2] The motion was amended December 10, 2014 to add creditors to the certification of service.

are currently undergoing substantial repairs, and that once these repairs are complete, the Properties will generate significant rental income

The Court held a preliminary hearing on the Motion on February 12, 2015. At that hearing, the Court found that the Creditor met its burden proving there is no equity in the property.[3] The Court continued the hearing to February 19, 2015 to take evidence from the Debtors and consider whether they met their burden.[4]

At the February 19 hearing, the Court heard the testimony of Mr. Washington. Mr. Washington reiterated the facts and arguments made by the Debtors in their objection to the Motion. He also testified that although the Properties are in need of serious and expensive repairs, he was in the process of making the repairs with funding from grants from Richland County. He provided the Court with a grant agreement signed by himself, as the Chairman of Carolina Encouragement Center, with a blank space for the signature of a Richland County Conservation Commission representative. He also provided the Court with quotes for the anticipated repairs covered by the grant and cancelled checks for completed work. He was confident that by the end of the summer the Properties would be fully repaired and able to generate significantly more rental income. In addition, Mr. Washington provided that Court with a copy of a check made to Richland County for the 2013 – 2014 taxes, and asserted, but did not provide proof, that the Properties were insured.

---

[3] As is required by SC LBR 4001-1(a)(1)(C), Creditor certified in its Motion that the value of the Properties is $306,300, the value which the Debtors place on the Properties in their schedules, and that the Creditor's liens total $369,781.72. In the Debtors' response to the Motion, they value the Properties at "$306,300 (per schedules)" or "$450,000 (per Movant)," and represent that the Creditor's liens total "$488,976.87 (per Movant)." At the preliminary hearing held on the Motion, the parties did not present any evidence disputing these representations. The Court thereafter ruled that Creditor met its burden.

[4] Debtors were not present at the preliminary hearing. The notice of the hearing erroneously listed the wrong house number as the Debtors' address. Other notices from Movant to Debtors directed to the incorrect address in fact reached Debtors. When the Debtors' attorney contacted them the day before the hearing, Debtors informed him they had an obligation that could not be rescheduled, and did not attend or move for a continuance.

Mr. Washington further testified regarding his business, CPI. CPI is a moving company. Its office is at the 1815 Gervais property. This property is in an area identified by the U.S. government as a "HUBZone." Businesses in a HUBZone receive preferential treatment for the awarding of governmental contracts. Most of CPI's contracts were obtained by virtue of its HUBZone status. Thus, if the 1815 property were foreclosed on, forcing CPI to move, CPI would potentially lose its HUBZone status and subsequently its contracts. As proof of CPI's success at obtaining these contracts, Mr. Washington provided the Court with two partially completed work orders that lacked signatures and a letter signifying a contract with Clemson University for an estimated annual amount of $390,000. He did not provide the Court with any information regarding how the contract money would flow through CPI, CPI's overhead, the expenses the contracts would incur, or how the Debtors as individuals would profit from the contracts.

At the close of the hearing, the Court granted Creditor's Motion, subject to Fed. R. Bankr. P. 4001(a)(3)'s 14-day stay. The following discussion memorializes the Court's findings of facts and conclusions of law stated at the close of the February 19, 2015 hearing.

**II. Discussion**

Creditor's Motion requests relief from the automatic stay pursuant to both 11 U.S.C. § 362(d)(1) and (2). Section 362(d)(1) provides relief from stay "for cause, including the lack of adequate protection." Section 362(d)(2) provides relief from the stay if (1) there is no equity in the property and (2) the property is not necessary for reorganization. The burden of proof on whether there is equity in the property is on the party requesting relief from the stay. 11 U.S.C. § 362(g). The burden of proof as to all other elements rests on the party opposing relief from stay. *Id*. As stated *supra*, the Court previously ruled that there is no equity in the Properties. At issue is

whether cause, including lack of adequate protection, exists to lift the stay, and whether the Properties are necessary for an effective reorganization.

Adequate protection is not defined by the Code, however, § 361 provides three non-exclusive mechanisms for debtors to provide creditors adequate protection: (1) periodic cash payments, (2) the granting of a replacement lien, or (3) some such other protection, other than an administrative expense claim, that would provide the creditor with the "the indubitable equivalent" of its interest in the property. 11 U.S.C. § 361. Creditors are entitled to adequate protection as a matter of right when, as here, they are stayed from enforcing their interest. 3 Collier on Bankruptcy ¶ 361.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Requiring adequate protection reconciles "the competing interests of the debtor's need to reorganize and the secured creditor's entitlement to constitutional protection of its bargained-for property interests." *Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.)*, 780 F.2d 1339, 1342 (8th Cir. 1985).

The Code also does not identify when property is necessary for an effective reorganization. The Supreme Court interpreted this phrase to mean that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988) (citations omitted). The debtor must therefore show that "a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc.*, 987 F.2d 154, 157 (3d Cir. 1993). The longer a debtor remains in bankruptcy, the more details a debtor must provide to the court to prove that the property is necessary and a reorganization is in prospect. *Timbers*, 484 U.S. at 376.

Debtors do not disagree that they have not made payments on the loan and Creditor's interest is not currently adequately protected. They instead argue that cause does not exist to lift the stay because they can provide adequate protection. The only manner in which Debtors propose to provide adequate protection is by making the previously discussed payments of $2,600 per month. The Court would first note that this proposal for adequate protection was rejected after the first hearing, and, when asked if these payments would be satisfactory adequate protection at the February 19 hearing, the Creditor again rejected this offer. Regardless of whether monthly payments of $2,600 would constitute adequate protection, however, Debtors have not persuaded this Court that they would be able to make the payments.

Debtors have not made a payment on the loans in nearly a year. The evidence before the Court is that the Debtors currently have $375 in an account attributable to the Properties. Mr. Washington's testimony provided inconsistent evidence as to both the rents received and expenses incurred regarding the Properties since the bankruptcy was filed. In addition, the Debtors' monthly operating reports do not reflect an accumulation of funds to warrant the Court finding that an adequate protection payment would actually be paid. The Debtors have not met their burden on the issue of adequate protection.

Turning to the second issue in this case: Debtors have also not met their burden proving that the Properties are necessary for an effective reorganization or that a reorganization is in prospect. The Court understands that the Properties or some similar properties are necessary for the Debtors' business to continue receiving favorable government contracts. Mr. Washington's testimony indicates that CPI has been awarded $500,000 in annual government contracts, plus some additional smaller contracts. However, Debtors have not provided the Court with any information regarding what expenses CPI will incur on these contracts, how the money would

6

flow from CPI to the Debtors' individually, and how this money would ultimately pay the Creditor's loan.[5] They also provided no information to the Court as to what progress was being made towards filing and confirming a plan and disclosure statement. The Court is left with no information that would allow it to make a determination that, by a preponderance of the evidence, these particular real properties are necessary for an effective reorganization of the Debtors as individuals, or that a plan is realistically in prospect.

### III. Conclusion

Creditor's Motion is granted, subject to Fed. R. Bankr. P. 4001(a)(3). The stay is modified and South Carolina Community Bank may proceed against its collateral.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/26/2015**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/26/2015

---

[5] The original loan was modified by the terms of the confirmed chapter 11 plan in Debtors' second bankruptcy case and further modified when Debtors could not make those reduced payments. Debtors are seeking a further modification of this payment obligation and have presented no evidence of the financial wherewithal to make payments that would adequately protect Creditor or ultimately retire the loan.